This was a revived appeal from a decree of the Richmond Chancery District Court, in a suit brought by the appellees against the appellant’s testator.
The bill states that certain negroes, belonging to the estate of William Aylett, deceased, being about to be sold to satisfy an execution, Philip Aylett, who acted for the executor, requested Bernard Moore to lend him the sum which was wanting to discharge the execution ; that Moore agreed to do so, upon condition that Mary, one of the slaves, who was then with child, and had also a child in her arms, should be set up, and purchased by him; that he should hold the said slaves as a security for some time, but, if the money was not paid in a convenient time, should be authorised to sell them for the best price that could be got, and, after repaying himself, to restore the surplus to the said Aylett; that Philip-Ay-lett agreed to this proposal, and the slaves were set up and purchased by Moore, upon those terms expressly declared by himself; the sum advanced being far less than their value; that these transactions took place in July, 1791; and, in February following, the plaintiff, Aylett, sent an offer of the money borrowed to the said Moore, and desired him to *restore the slaves, which he refused to do, and hath since sold them at á considerable advance, and peremptorily refuses any part of the money to the plaintiff, who therefore prays relief.
The answer of Moore admits the purchase for 341. 10s. 5d. and the terms, except that he alleges he was to restore the slaves, in case the money, with interest, was repaid, in eight or ten weeks; that he pérmitted them to return home after the sale, where *25 they stayed eight or ten weeks, at the end of which time, seeing no prospect of the money being jjaid, he sent for them to his own house, where they remained twelve months, and then were sold to James Hill for SOI. — that the negro woman, while she was in his possession, was delivered of a child, and was a mere burthen to him; that he believes Philip Aylett did, four or five months after the sale, write to him, and offer to take the negroes back, but he saw no money, and none was ever tendered to him.
The depositions of 'Thomas Gary and Benjamin Temple, in substance, correspond with the allegations in the bill.
The Chancellor, on the 28th of September, 1799, decreed “that the defendant, unless he restore to the plaintiff, Claiborne, the slaves aforesaid, and the children, since born of the mother, upon receiving the principal sum (borrowed) and- interest due thereon, or so much thereof as shall exceed the mother’s profits, do pay unto the plaintiff the value of the said slaves over the said principal and interest; and directed the said slaves to be estimated by a Jury, to be impanelled and charged before the District Court of King and Queen, and their verdict thereon to be certified to the Court. In case the defendant should restore the slaves; and profits of the mother be claimed ; for ascertaining them, liberty to resort to the Court was reserved to the parties.”
The Jury assessed the value of the slave Mary, at the time of their verdict, at SOI. and that cf her child at 301. and said there were no profits of the said slaves, since they were pledged. On the 12th of May, 1801, the Chancellor decreed “that the defendant do pay unto the plaintiff 4S1. 9s. 6d.” (being the difference between 341. 10s. 3d. the money lent, and 801. the value fixed on the negroes by the Jury,) “with interest thereon at the rate of five per cent, per annum, from July, 1792, and the costs.”
Bernard Moore applied to the Court of Appeals for an appeal from that decree, which was allowed him. In his ^'petition for an appeal, he insisted on the following errors in the decree:
1. That interest had not been allowed him on the money lent;
2. That interest had been allowed to the executor on the balance of the value of the negroes as fixed by the Jury, after deducting- the sum lent, although the answer denied the money' had ever been tendered, and the Jury expressly found that there were no profils of the slaves;
3. That interest, if properly allowable to the said executor, ought not to have been allowed from 1792, upon the present value.
Nicholas, for the appellant, also contended, 4. That, if the slaves were .pledged to Moore, all the appellees can rightfully claim is the balance of the 501. for which Moore sold the slaves, after deducting the sum loaned; with interest on that balance from the time of the sale to Hill.
Warden, for the appellees, made three points;
1. That the verdict was imperfect, as not being a direct answer to the question, which the order required to be answered by the Jury, and therefore an improper ground for a decree; having estimated only the values of Mary and one of her children, instead of estimating her value — that of her son who was nineteen months old in July, 1791 — and the values of all her children born after that period — and without saying, that she had no after-born child, and that he was the child valued.
2. That even if Mary had borne no child after the purchase of her by Moore, and she only and her child, then near two years old, had been valued, their valuations were evidently so far below the price which they would have brought, that the verdict ought to have been rejected on that account.
3. That the sale, by the appellant, of Mary and her two children, (for the answer admits that she had a second child before that sale,) within eight months after his receiving them as a pledge for the money lent, and without any demand thereof, was such a wrong, as ought to have deprived him of all interest, and also to have exposed him to the payment of damages.
On this point, he insisted that Moore ought 1o have offered to return the negroes, and demanded his principal and interest to be paid him. . The payment was to have been made in convenient time. Had Moore a right to judge of that time? Moore had the use of the slaves, *which ought to be set against the interest of his money, until he sold them; and, from that time, interest was properly allowed the executor on the surplus, because he then had the use of the money, which was not burthensome to him, though the negroes are pretended to have been so. He cited here the case of Hooper v. Shepard, (a) The decree was right, so far as respected the interest; but the error was, that, instead of giving the appellees too much, it gave them too little, in consequence of the omission in the verdict. It ought, therefore, to be reversed, and a new valuation of the slaves directed.
Nicholas, in reply. With respect to the value of the slaves, the jury were competent to decide, and this Court cannot say that they decided improperly. Mr. Warden, in endeavouring to set aside the decree, is labouring to destroy that under which he claims. He made no objection in the Court of Chancery to the verdict, but took the decree as it stands. As to the children of Mary born after the sale made by Moore; unless it can be shewn that he had no right to sell the slaves, their .issue belongs to the person to whom he sold them, not to himself; and, therefore, he should not be responsible for them. This Court ought to presume, as to any other children of Mary, that there were none such, as the appellees took their decree, without objecting that any were omitted in the verdict.
Curia advisare vult.
Wednesday, October 15. The President delivered the opinion of the Court, That the decree be reversed, and the costs of the appeal be paid by the appellees; and, this Court proceeding to make such decree as the said High Court of Chancery ought to have pronounced, it was further decreed, that the appellant pay to the appellee, ex *26 ecutor of William Aylett, the sum of 131. 7s. (which appears to be the difference between the amount of the money lent, with the interest due thereon at the time when Bernard Moore sold the slaves, and SOI. the sum for which he sold them,) with interest from the first day of October, 1792, until payment, and the costs in the said Court of Chancery.

See monographic note on “Mortgages” appended to Forkner v. Stuart, 6 Gratt. 197.
The principal case was cited in Gordon v. Connon, 18 Gratt. 401.

 2 Stra. 1039.